ERIC JEROME TRAYLOR                   CIVIL ACTION NO. 18-cv-0775

VERSUS                               JUDGE FOOTE

SOUTHERN COMPONENTS, INC., ET AL.   MAGISTRATE JUDGE HAYES

<u>MEMORANDUM RULING</u>

Before the Court is a motion for summary judgment filed by Defendants Southern

Components, Inc. ("Southern") and Matt Kral ("Kral"). [Record Document 20]. For the

reasons given below, the motion is **GRANTED**, and all claims against Defendants are

**DISMISSED WITH PREJUDICE.**

I.    <u>Background</u>[1]

Plaintiff Eric Traylor ("Traylor"), a forty-four-year-old African-American man, applied

for work as a night forklift operator at Southern, a company that produces roof and floor

trusses. [Record Documents 1 at 4, 7 and 20-2 at 1]. After he was hired by Kral, Southern's

Production Manager, on July 12, 2016, [Record Document 20-2 at 2], Traylor began training

under Britney Wells ("Wells"), an African-American woman and Southern's senior forklift

operator, [Record Document 20-5 at 3]. Although Wells supervised Traylor's training, she was

not a manager at Southern and had no authority over hiring or firing. [Record Document 20-

2 at 2]. During this training period, Southern expects new forklift operators to learn the skills

necessary to handle and load Southern's specialized products. [Record Document 20-5 at 1–

---

[1] Because Plaintiff has not filed a statement of material facts contesting Defendants'
statement, this Court takes the facts in Defendants' "Statement of Uncontested Facts,"
[Record Document 20-2], as uncontroverted.

2]. The position for which Traylor was training "requires someone able to handle a large amount of responsibility and who is able to work independently." [Record Document 20-2 at 1].

When he applied for his position, Traylor indicated that he was in good physical health with no medical restrictions and that his only medical condition was asthma; he also provided Southern with a copy of his military discharge paperwork which indicated "disability" as the reason for separation. [Record Documents 20-2 at 1–2, 20-3 at 36, and 23-1 at 24]. While working with Wells, Traylor told her that he could not stand for long periods because "I have pain in my legs and they well up." [Record Document 20-3 at 42]. She replied that being able to stand for long periods was a part of the job. [*Id.* at 43]. Traylor never requested accommodations, such as being allowed to sit more frequently, nor did he inform Kral of any need for accommodations. [Record Documents 20-3 at 43 and 20-5 at 3]. Traylor was older than some of the other employees, and Wells told him that he was old. [Record Document 20-3 at 53–54]. Traylor also believes that Wells received preferential treatment because she was a woman. [*Id.* at 52].

On August 10, 2016, Southern terminated Traylor because he "was not learning at an acceptable pace and did not exhibit the level of skill, responsibility, and independence necessary to believe that he would be able to successfully fulfill the duties of a night forklift operator." [Record Document 20-5 at 3]. Traylor believes that his discharge was the result of racial and age discrimination because he was replaced by a white man in his forties. [Record Document 20-3 at 50]. He also believes that his discharge was in retaliation for telling Wells that he intended to file an EEOC charge because she was not training him appropriately. [*Id.*

at 56–57]. Kral did not know that Traylor had expressed an intention to file the EEOC charge. [Record Document 20-5 at 4]. Following his discharge, Traylor filed a charge, and the EEOC issued a right-to-sue letter on March 19, 2018. [Record Document 20-2 at 3].

Traylor now asserts discriminatory termination claims under the race and gender discrimination provisions of Title VII, hostile work environment and discriminatory termination claims under the Age Discrimination in Employment Act (the "ADEA"), unlawful termination and failure to accommodate claims under the Americans with Disabilities Act (the "ADA"), and wage discrimination claims under the Equal Pay Act. [Record Document 1 at 4, 12–13].[2] Defendants have moved for summary judgment. [Record Document 20]. Traylor has filed an opposition, and Defendants have filed a reply, rendering this matter ripe for decision. [Record Documents 23 and 24].

## II.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment

---

[2] As discussed below, the Court also concludes that Traylor has raised a retaliation claim because he was fired after he told Wells that he planned to file an EEOC charge.

[3] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will

4

be deemed admitted, for purposes of the motion, unless controverted as required by this rule."

*Id.*

### III.   Analysis

#### A.   Claims Against Kral

Traylor has sued Kral in his capacity as a supervisor at Southern. [Record Document 1 at 2]. "[T]itle VII does not permit the imposition of liability upon individuals unless they meet [T]itle VII's definition of 'employer.'" *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994). A Title VII "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). Although the latter phrase could suggest individual liability, the Fifth Circuit has approvingly cited a Ninth Circuit case that concludes that the "any agent" language "incorporate[s]" *respondeat superior* liability into [T]itle VII." *Grant*, 21 F.3d at 653 (citing *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993)). Because no evidence suggests that Kral personally employs anyone, he is not liable under Title VII. The same logic also applies to Traylor's ADEA claims. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996) (applying *Grant* to ADEA claims).

Although the Fifth Circuit has not spoken directly on this issue, the "virtually universal view" is that the employment-discrimination provisions of the ADA do not expose supervisors to individual liability. *Roman-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 52 (1st Cir. 2011); *see Parker v. Benteler Steel Tube Mfg. Corp.*, No. CV 17-1453, 2018 WL 3685383, at *3 (W.D. La. July 18, 2018) (concluding that the Fifth Circuit would follow the consensus view of the other circuits), *report and recommendation adopted*, No. CV 17-1453, 2018 WL 3672744 (W.D. La. Aug. 2, 2018). A Title VII employer is a "person engaged in an industry affecting

commerce . . . and any agent of such a person," 42 U.S.C. § 2000e(b), while an employer under the ADA is "a person engaged in any industry affecting commerce . . . and any agent of such person," 42 U.S.C. § 12111(5)(A). As the ADA's definition of employer is identical to Title VII's, this Court concludes that Title I of the ADA does not impose individual liability on supervisors and hence that Kral is not liable for any of Southern's alleged ADA violations.

Similar consensus is lacking regarding individual liability under the Equal Pay Act. Some courts hold that individual supervisors are not liable for Equal Pay Act violations, while others conclude the opposite. *Compare Harris v. Harvey*, 992 F. Supp. 1012, 1013–14 (N.D. Ill. 1998) *with Boykin v. Wells Fargo Bank, N.A.*, C/A No. 3:18-599, 2018 WL 4999780, at *2 (D.S.C. Aug. 14, 2018), *report and recommendations adopted*, 2018 WL 4962077 (D.S.C. Oct. 12, 2018). In an unpublished opinion, the Fifth Circuit affirmed a district court's grant of summary judgment to an individual supervisor on an Equal Pay Act claim. *Souter v. Univ. of Tex. at San Antonio*, 459 F. App'x 506, 511–12 (5th Cir. 2012) (per curiam) (unpublished). The district court had concluded that the claim against the supervisor "was a remedial redundancy" when the plaintiff "already had a claim against the [employer] under the Equal Pay Act." *Id.* at 511 n.4. Because Traylor cannot recover twice for the same alleged act of discrimination, this Court concludes that Traylor's Equal Pay Act claim against Kral is also redundant of his claim against Southern. Therefore, the Court grants summary judgment for Kral on all claims raised against him under Title VII, the ADEA, the ADA, and the Equal Pay Act.

### B.     Equal Pay Act Claims

Traylor has alleged a violation of the Equal Pay Act because Wells "went inside the office and got his wage information and went out and told it to other employees which created

a hostile work environment." [Record Document 10 at 5]. With a few exceptions not relevant here, under the Equal Pay Act:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .

29 U.S.C. § 206(d)(1). A prima facie case under the Equal Pay Act has three elements: (1) the employer must be subject to the Equal Pay Act; (2) the employee's work must "require[e] equal skill, effort, and responsibility under similar working conditions" to that of an opposite-sex comparator; and (3) the employee must be paid less than the comparator. *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993) (quoting *Jones v. Flagship Int'l*, 793 F.2d 714, 722–23 (5th Cir. 1986)).

Although his filings are not entirely clear, it appears that Traylor has pointed to Wells as the appropriate comparator, as he asserts that she was treated more favorably than he was. [Record Document 20-2 at 2]. There is no dispute that Wells had more experience with the company. [Record Document 20-3 at 52–53]. Moreover, Traylor was paid $12.00 per hour, [Record Document 20-2 at 2], and no summary judgment evidence establishes Wells's compensation. Therefore, Traylor has satisfied neither the second nor third prongs of his prima facie case, and so this Court must grant summary judgment to Southern on Traylor's Equal Pay Act claim.

### C.    Title VII Unlawful Termination Claims

Construing Traylor's pro se complaint and other documents in the record liberally, the Court concludes that Traylor has asserted that his termination resulted from race and gender

discrimination. [Record Documents 1 at 4 and 20-3 at 51–53]. An employer may not "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as in the instant case, a plaintiff offers only circumstantial evidence of discrimination, the three-step *McDonnell Douglas* framework applies. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 792, 802 (1973)). To survive summary judgment within that framework, a plaintiff must first make out a prima facie case. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003). To do so, a Title VII plaintiff must establish that he or she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [the] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam)). Once the employee has carried this burden, the employer must produce a legitimate, non-discriminatory reason for the challenged employment decision. *Haire v. Bd. of Supervisors*, 719 F.3d 356, 362–63 (5th Cir. 2013) (citing *Manning*, 332 F.3d at 881). This explanation must be "clear and reasonably specific." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981) (citing *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011–12 n.5 (5th Cir. 1979)).

> If the employer produces such an explanation,

> the onus shifts back to the plaintiff to prove either that the defendant's articulated reason is merely a pretext for race discrimination (the pretext alternative), or that the defendant's reason, while true, is only one of the reasons for its decision, and another "motivating factor" is the plaintiff's protected characteristic (the mixed-motives alternative).

*Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013) (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011)). A Title VII plaintiff can demonstrate pretext in two ways. First, the plaintiff can show that the employer's "proffered explanation is false or 'unworthy of credence.'" *Vaughn*, 665 F.3d at 637 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). An employer's explanation is false or unworthy of credence when the "explanation, accurate or not, is [not] 'the real reason' for firing" the employee. *Id.* (quoting *Laxton*, 333 F.3d at 579). Hence, an employer "is allowed to be incorrect in its assessment of the facts it relies on to justify firing [the plaintiff], but it is not allowed to have any discriminatory animus . . . in making its decision." *Id.* at 636 (citing *Laxton*, 333 F.3d at 579; *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)). Second, pretext can be shown via disparate treatment, that is, by proof that "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citing *Wallace*, 271 F.3d at 221–22; *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001); *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir. 1985)). To survive summary judgment through the mixed-motive alternative, a plaintiff "must offer sufficient evidence to create a genuine issue of material fact that the defendant's reason, while true, is only one of the reasons for its conduct and that another motivating factor was the plaintiff's protected characteristic." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (citing *Rachid v. Jack In the Box,*

*Inc.*, 376 F.3d 305, 310 (5th Cir. 2004), *abrogated in part by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).[4]

Traylor alleges that he was fired because he is black and because he is a man. [Record Documents 1 at 2 and 20-3 at 39]. He has failed to make out a prima facie case for discriminatory termination on the basis of gender because he was replaced by another man rather than by a woman. [Record Document 20-3 at 51]. Traylor also asserts that he was treated less favorably than Wells. [*Id.* at 52]. To the extent that any less favorable treatment rose to the level of an adverse employment action, Traylor's claim fails because Wells is not similarly situated. [*Id.* at 52–53]. She had "extensive experience and . . . had trained numerous other forklift operators during her tenure as an employee of Southern," while he was still a trainee at the company. [Record Document 20-5 at 3].

Turning to the issue of racial discrimination, this Court finds that Traylor has established a prima facie case. He is African American. Although Southern ultimately found that Traylor was unable to handle the demands of his position, he at least met minimum qualifications as he had some training in heavy equipment operations. [Record Document 20-4 at 6]. He was fired, which is clearly an adverse employment action. [Record Document 20-2 at 2]. As his replacement was white, Traylor was replaced by someone outside of his protected class. [Record Document 20-3 at 51]. However, Southern has explained its decision to

---

[4] *Rachid* is no longer good law in the ADEA context because the Supreme Court has held that mixed motives do not violate the ADEA. *See Gross*, 557 U.S. at 169. Nevertheless, the Fifth Circuit continues to apply *Rachid*'s presentation of the mixed-motive method of proof to cases brought under antidiscrimination statutes where mixed-motive theories are cognizable. *See, e.g., EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014) (applying *Rachid*'s approach to an ADA claim).

terminate Traylor—his failure to "exhibit the level of skill, responsibility[,] and independence necessary to believe that he would be able to successfully fulfill the duties of a night forklift operator." [Record Document 20-5 at 3]. Because poor performance and lack of productivity are valid reasons to terminate an employee, *see Engelhardt v. Qwest Corp.*, 918 F.3d 974, 979–80 (8th Cir. 2019); *Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 395–96 (5th Cir. 2012) (per curiam) (unpublished), Southern's explanation is legitimate.

Southern has carried its burden of production, and so Traylor must rebut Southern's explanation by showing pretext or by showing that race was a motivating factor in the termination decision. *See Autry*, 704 F.3d at 347 (citing *Vaughn*, 665 F.3d at 636). Traylor has not identified any comparator and so cannot proceed to show pretext on the basis of disparate treatment. Instead, he attempts to prove pretext by suggesting that Kral's explanation for terminating him is false because he was performing adequately. [Record Documents 20-3 at 60 and 23 at 3]. "[S]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (citing *Sandstad*, 309 F.3d at 899). Rather, an employee disputing an employer's assertion that an employee was fired for poor performance must offer corroborating evidence. *Ajao v. Bed Bath & Beyond Inc.*, 265 F. App'x 258, 263 (5th Cir. 2008) (per curiam) (unpublished) (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354–55 (5th Cir. 2005), *abrogated in part on other grounds by Gross*, 557 U.S. 167). Traylor's only rebuttal evidence is his testimony that Kral "didn't have no [sic] reason at all [to fire Traylor] because I didn't do anything wrong." [Record Document 20-3 at 60].[5] This self-assessment is insufficient to

---

[5] In his opposition memorandum, Traylor states, "I dispute the claim that I did not

show pretext. Likewise, Traylor fails to show that race was a motivating factor in his termination. His only evidence is that a white man replaced him. While that evidence suffices to meet one element of the prima facie case, no reasonable jury could conclude from that evidence alone that race motivated his firing. As a result, this Court concludes that Southern is entitled to judgment as a matter of law on Traylor's Title VII claims for discriminatory termination.

### D.   <u>ADEA Claims</u>

Although his theories of liability are not entirely clear, mindful of its duty to construe filings by self-represented litigants "liberally," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), this Court concludes that Traylor has asserted two ADEA claims: a hostile work environment and unlawful termination, [Record Document 1 at 4, 10].

### 1.   **Hostile Work Environment**

A hostile work environment can give rise to a claim under the ADEA. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011).

---

exhibit the level of skill, responsibility, and independence necessary to successfully fulfill the duties as a night forklift operator because I was not properly trained." [Record Document 23 at 3]. By this statement, Traylor appears to mean that even if he was underperforming, this was Wells's fault. The Court cannot consider this statement because it is unsworn and so does not constitute competent summary judgment evidence. *See Johnston v. City of Hous.*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." (quoting *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991))). Moreover, even if his performance did result from poor training, an employer may incorrectly assess the facts justifying a termination without violating Title VII. *Vaughn*, 665 F.3d at 636. At most, Traylor's statement indicates that Kral incorrectly evaluated Traylor's performance by failing to take into account the effectiveness of Wells's training; the statement does not warrant the inference that Kral was motivated by racial animus.

A plaintiff advances such a claim by establishing that (1) he was over the age of 40; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

*Id.* (citing *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996)). In determining whether a hostile work environment exists, courts must consider the following circumstances: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v. Henderson Postmaster Gen.*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). The working environment must be both "objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22 (1993)).

Traylor fails to establish the third element of his claim. To show that a workplace is objectively hostile, it must be "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Dediol*, 655 F.3d at 441 (quoting *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009)). Mere name calling may be insufficient when the terms used are not inherently offensive. *Cf. Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) (finding in an unlawful-termination case that a "jury could find the repeated use of 'old bitch' indicates . . . discriminatory motivations"). For instance, the Fifth Circuit affirmed summary judgment for the employer on a hostile work environment claim where the evidence showed that the plaintiff's co-

workers called him "names like 'old man,' 'old fart,' 'pops,' and 'grandpa.'" *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012). Wells told Traylor "every day" that he was old and other age-related comments were made by "[o]ne of the guys on the line that came out." [Record Document 20-3 at 54]. Summary judgment evidence does not support a conclusion that vulgar or insulting language was used. There is no suggestion that Traylor was physically threatened or humiliated. Traylor does not even suggest that Wells's comments interfered with his ability to do his job. *See Reed*, 701 at 443 (affirming summary judgment when the plaintiff made "the conclusory statement that the comments interfered with his job performance, [but] . . . d[id] not indicate *how*"). Even if Traylor was subjectively offended, the Court cannot conclude from the evidence in the record that a reasonable person in Traylor's position would find that these comments "permeated" his employment or rendered the environment so hostile as to undermine his ability to work. Hence, Southern is entitled to summary judgment on this claim.

### 2. Unlawful Termination

The ADEA makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). As with Title VII claims, ADEA claims can be brought with either direct or circumstantial evidence. *Nicholson v. Securitas Sec. Servs. USA, Inc.*, 830 F.3d 186, 189 (5th Cir. 2016) (citing *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010)). Traylor has some direct evidence of discriminatory intent in the form of Wells's comments about his age. In the direct-evidence context,

> [f]or comments in the workplace to provide sufficient evidence of discrimination, they must be 1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3)

made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.

*Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (internal quotation marks omitted) (quoting *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999). As Wells lacked the authority to fire Traylor, her comments are not direct evidence that he was terminated for his age.

Turning now to proof via circumstantial evidence, although it is not entirely certain the *McDonnell Douglas* framework applies to ADEA claims, the Fifth Circuit has consistently treated ADEA claims based on circumstantial evidence under that framework, *see, e.g., Jackson*, 602 F.3d at 378 & n.14, and Defendants have argued from that perspective. Under the *McDonnell Douglas* approach, a plaintiff must first establish a prima facie case of discrimination. *Id.* at 378 (citing *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)); *see McDonnell Douglas*, 411 U.S. at 802–04. Then, the burden shifts to the defendant to produce evidence that the plaintiff was terminated for a nondiscriminatory reason. *Jackson*, 602 F.3d at 378. *Id.* If this burden is met, the plaintiff must then show that the legitimate reason offered by the defendant was not its true reason but was instead a pretext for discrimination. *Id.*. "It is at this third stage that the plaintiff must demonstrate that age was the 'but-for' cause of the defendant's employment decision, notwithstanding the defendant's putative non-discriminatory reason for the decision." *Dubea v. Sch. Bd. of Avoyelles Par.*, 546 F. App'x 357, 360 (5th Cir. 2013) (citing *Reed*, 701 F.3d at 439–40).

To set out a prima facie case for discriminatory termination on the basis of age, an employee must have been: (1) discharged; (2) qualified for the position; (3) within the protected age group at the time of the discharge; and (4) either replaced by someone younger

or outside the protected class, or otherwise discharged because of age. *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (citing *Rachid*, 376 F.3d at 309). Traylor testified that he was replaced by a person named either Anthony or James. [Record Document 20-3 at 50]. Traylor has presented no positive evidence of this person's age, claiming both that this person was in his "forties" and that "I don't really know his age, to be honest with you. He was an older guy." [*Id.*]. It is Traylor's burden on summary judgment to satisfy all four elements of the prima facie case. Here, he has not established that his replacement was either younger than forty or younger than he was. He has also failed to present evidence that he was discharged because of his age. While vulgarity is not necessarily required to prove that a comment about an employee's membership in a protected group demonstrates animus, *see, e.g., Normand v. Research Inst. of Am., Inc.*, 927 F.2d 857, 862–64 (5th Cir. 1991), the comment must be negative either facially or in context, *compare Russell*, 235 F.3d at 226 ("[T]he jury could find the repeated use of 'old bitch' indicates . . . discriminatory motivations.") *with Reed*, 701 F.3d at 443 (holding that evidence of co-workers' use of "names like 'old man,' 'old fart,' 'pops,' and 'grandpa'" does not create a hostile environment without additional explanation of the comments' "nature and context"). Traylor has alleged that Wells once asked him his age and that when he answered, "she said that dam [sic] you old." [Record Document 1 at 10]. He has testified that Wells "told [him] every day that [he] was old." [Record Document 20-3 at 54]. While these observations about Traylor's age were certainly unnecessary, they were not phrased in inherently offensive terms, and Traylor has not explained how the comments' context demonstrates age-based animus. Because Traylor has failed to establish a prima facie case,

Southern is entitled to summary judgment on Traylor's claim that his termination violated the ADEA.

### E.    ADA Claims

Traylor brings ADA claims for unlawful discharge and for failure to accommodate his alleged disabilities. [Record Document 1 at 4].[6] Title I of the ADA prohibits employers from discriminating against persons with disabilities. 42 U.S.C. §§ 12111–12117. A disability is a "physical or mental impairment that substantially limits one or more major life activities . . . ; a record of such an impairment; or . . . being regarded as having such an impairment." *Id.* § 12102(1). Because Congress has instructed courts to construe this definition as broadly as possible, *id.* § 12102(4)(A), the "threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis," 29 C.F.R. § 1630.2(j)(1)(iii). To be protected by the ADA, an employee with a disability must be "qualified," that is, able to perform the essential functions of the employment position either with or without accommodations. 42 U.S.C. § 12111(8). Although courts must give weight to an employer's determination that a given job function is essential, *id.*, this "deference is not absolute," *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 698 (5th Cir. 2014) (citing 29 C.F.R. pt. 1630, app. § 1630.2(n)).

### 1.    Unlawful Termination

An ADA plaintiff alleging wrongful termination with only circumstantial evidence must proceed under the *McDonnell Douglas* burden-shifting framework. *Id.* at 694 (citing *see McDonnell*

---

[6] It is unclear whether Traylor also asserts a hostile work environment claim under the ADA, but as there is no record evidence of pervasive discriminatory remarks or behavior by supervisors or co-workers directed at his alleged disabilities, such a claim would not survive summary judgment in any event.

*Douglas*, 411 U.S. at 802; *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013)). The prima facie case requires that the employee: (1) be disabled; (2) have been qualified for the position; and (3) have suffered an adverse employment action on account of that disability. *Id.* at 697 (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). If the employee successfully establishes a prima facie case, the employer must then articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 694 (citing *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009), *abrogated in part on other grounds by LHC Grp.*, 773 F.3d 688)). If the employer can do so, the burden reverts to the employee to produce evidence that the employer's explanation was pretext for unlawful discrimination or that the employee's disability was a motivating factor in the employment decision. *Id.* at 702 (citing *Rachid*, 376 F.3d at 312). "Pretext is established 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'" *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Laxton*, 333 F.3d at 578). An employee must prove pretext with "substantial evidence." *Id.* (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015)).

This Court will assume without deciding that Traylor has established a prima facie case. Southern has articulated a legitimate reason for terminating him—namely, that he lacked the independence and skill necessary to be a night forklift operator. [Record Document 20-5 at 3]. The only Southern employee who made any comments or otherwise referenced any of Traylor's alleged disabilities was Wells. [Record Document 20-3 at 56]. After Traylor told her that he could not stand for long periods because his legs would swell, she "basically just said

that you couldn't work around here because you've got to stand for long periods." [*Id.* at 43]. This showing is insufficiently "substantial" to establish that Southern's view of Traylor's work performance was either a pretext for disability discrimination or that his disability was a motivating factor in the termination.[7] As a result, Southern is entitled to summary judgment on this claim.

### 2.    Failure to Accommodate

An employer's failure to accommodate an employee's disability is an independent theory of liability under the ADA. *Dillard v. City of Austin*, 837 F.3d 557, 562 (5th Cir. 2016) (citing *LHC Grp.*, 773 F.3d at 703 n.6). To prevail on such a claim, a plaintiff must show: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Neely*, 735 F.3d at 247 (5th Cir. 2013) (quoting *Feist v. La. Dep't of Justice, Office of the Attorney Gen.*, 740 F.3d 450, 452 (5th Cir. 2013)). A qualified individual is one who is "able to 'perform the essential functions'" of the position "'with or without reasonable accommodation.'" *Credeur v. Louisiana ex rel. Office of the Attorney Gen.*, 860 F.3d 785, 792 (5th Cir. 2017) (quoting 42 U.S.C. § 12111(8)). While an employer must "engage in a good faith interactive process" to identify reasonable accommodations, *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (citing *Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005)), in litigation, the <u>employee</u> must propose a reasonable

---

[7] As discussed above, Traylor's view that he was doing a good job as an employee without some sort of corroboration is insufficient to demonstrate pretext.

accommodation as part of the prima facie case, *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996).

Traylor bases his claim on three alleged disabilities: a spine condition, stress fractures, and glaucoma. [Record Documents 1 at 4 and 20-3 at 41].[8] He claims that Southern was aware of these disabilities because he submitted his DD214, a form issued to armed services members upon discharge, along with his application. [Record Document 20-3 at 36]. Although Southern's employee file does not contain the DD214, [Record Document 20-4], because Traylor testified that he provided Southern with a copy, [Record Document 20-3 at 36], the Court must infer that Southern did have access to that form. Nevertheless, the Court cannot consider the contents of Traylor's DD214 because he has not authenticated it via affidavit or declaration. *See Johnson v. City of Shelby*, 642 F. App'x 380, 383 (5th Cir. 2016) (per curiam); *Elwakin v. Target Media Partners Operating Co.*, 901 F. Supp. 2d 730, 742 (E.D. La. 2012). And even if the DD214 were properly before the Court, the form only states that Traylor was given a disability discharge in June 2006. [Record Document 23-1 at 24]. The form does not indicate what those disabilities were, what his functional limitations were, or whether he was still disabled in July and August 2016. Traylor's only evidence that anyone at Southern was aware of any limitations he might have had is his testimony that he told Wells that he could not stand for long periods because his legs would swell. [Record Document 20-3 at 42]. He has not explained how any of the three disabilities on which he bases his claim are related to his legs nor has he proposed any accommodation that would have allowed him to fulfill the duties of

---

[8] Although Traylor testified that he has "other disabilities," he also maintained that the only disabilities for which he is making a claim are the three listed in his complaint. [Record Document 20-3 at 40–41].

a night forklift operator. Therefore, Traylor has failed to carry his burden of proof on the second and third elements of his failure-to-accommodate claim, and so Southern is entitled to summary judgment.

## F.   Retaliation

Although Taylor did not check the box in his complaint stating that he was bringing an action for retaliation, Traylor testified to an incident he considered retaliatory, [*Id.* at 57–60], Southern's memorandum in support of summary judgment addresses this set of facts under a retaliation rubric, [Record Document 20-1 at 13–14], and Traylor's opposition memorandum repeatedly mentions that employment discrimination laws prohibit retaliation, [Record Document 23 at 1–2]. As Defendants have elected to evaluate a retaliation claim, the Court will do likewise.

Traylor asserts that Wells was duplicitous:

> She was sending me home early saying that [Southern's management] were saying for her to do the loading and for me to go home. And the guy[9] come [sic] back telling me she was telling them I didn't know how to load and stuff like that.

[Record Document 20-3 at 59]. He then claims that on August 9, 2016, he was taken off of the forklift and directed to train another employee in a different task. [*Id.*]. A white employee was then placed on the forklift. [*Id.* at 50–51, 59]. Traylor announced to Wells that this was discrimination and that he intended to file an EEOC charge. [*Id.*]. Kral terminated Traylor's employment the next day. [*Id.* at 60]. Kral has affirmed that he never received notice of Traylor's intention to file the EEOC charge. [Record Document 20-5 at 4]. It appears that

---

[9] This individual was one of Traylor's co-workers. [Record Document 20-3 at 58].

Traylor bases his retaliation claim on the temporal proximity between his threat to file the charge and his termination. [Record Document 20-3 at 60].

Title VII, the ADA, and the ADEA all prohibit retaliation against an employee exercising rights secured by these statutes. 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 2000e-3(a) (Title VII); 42 U.S.C. § 12203(a) (ADA). Once again, the *McDonnell Douglas* approach applies because Traylor has no direct evidence of retaliation.[10] *See Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996) (citing *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983); *McDonnell Douglas*, 411 U.S. at 802–04). To make out a prima facie case of retaliation, an employment-discrimination plaintiff must establish: (1) participation in an activity protected by the relevant statute; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015) (citing *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001)) (ADEA);[11] *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (citing *Webb v. Cardiothoracic Surgery Assocs. of N. Tex.*, 139 F.3d 532, 540 (5th Cir. 1998), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53) (Title VII); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (citing *Grizzle v. The Travelers Health Network*, 14 F.3d 261 (5th Cir. 1994)) (ADA). Protected activity includes "oppos[ition to] any act or practice

---

[10] Traylor admits as much in his deposition in which he acknowledges that he only concluded that he was fired in retaliation because he was fired the day after he threatened to go to the EEOC. [Record Document 20-3 at 60].

[11] *Holtzclaw* required a fourth element for the prima facie case—that the employee who sought reinstatement was qualified for the position. 255 F.3d at 259. In *Wooten*, the Fifth Circuit questioned whether that requirement remained good law. 788 F.3d at 497 & n.2. Because this Court ultimately concludes that Traylor's retaliation claims fail at the pretext stage, this Court need not attempt to resolve this issue.

made unlawful" under Title VII, the ADA, or the ADEA, as well as making a charge, testifying, assisting, or participating "in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 12203(a) (ADA); *see* 42 U.S.C. § 2000e-3(a) (Title VII); 29 U.S.C. § 623(d) (ADEA).

"To satisfy this opposition requirement, [an employee] need only show that she had a 'reasonable belief that the employer was engaged in unlawful employment practices.'" *Turner*, 476 F.3d at 348 (quoting *Byers*, 209 F.3d at 428). In an unpublished opinion, the Fifth Circuit accepted the proposition that announcing an intention to file an EEOC charge is a protected activity but without much analysis. *Love v. Motiva Enters. LLC*, 349 F. App'x 900, 905 (5th Cir. 2009) (per curiam) (unpublished). Substantial persuasive authority at least implicitly accepts that threats to file such charges are protected when made in good faith. *Rumanek v. Indep. Sch. Mgmt., Inc.*, 619 F. App'x 71, 78 (3d Cir. 2008) (per curiam) (unpublished); *Kwong v. Lockheed Missiles & Space Co.*, 203 F.3d 831 (9th Cir. 1999) (memorandum) (unpublished table decision); *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 859 (7th Cir. 2008); *Morales v. Merit Sys. Protection Bd.*, 932 F.2d 800, 802–03 (9th Cir. 1991); *Hudson v. S. Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir. 1988). Based on this persuasive authority and the requirement that an employee need only have a reasonable belief that the employer has engaged in discrimination, this Court concludes that expressing a good-faith intention to file an EEOC charge is a protected activity.

The Court rejects Defendants' contention that "threatening to complain to the EEOC when being asked to perform new or different job duties is not the type of 'opposition' . . . constituting protected activity under Title VII." [Record Document 20-1 at 14]. Whether a change in job duties violates Title VII or another antidiscrimination statute is a complex legal and factual matter. So long as the employee is not acting in bad faith when announcing an

intention to make an EEOC charge based on conduct that could reasonably be perceived as discriminatory (even if it ultimately turns out to be innocent), the employee must be protected from retaliation.

Traylor threatened to file an EEOC charge because he noticed that he had been removed from a position for which he was training and a white employee given that task. [Record Document 20-3 at 50–51, 59]. While assigning different tasks to a black employee and a white employee may not ultimately violate Title VII (for instance, if the employees have different skill sets that make one more appropriate for a particular task), an employee is not necessarily in bad faith for concluding from the fact of differential treatment that unlawful discrimination has occurred. Hence, by threatening to file an EEOC charge, Traylor engaged in protected activity.

Because his termination is clearly an adverse employment action, the question is whether Traylor can establish a causal connection between his announcement to Wells that he would file an EEOC charge and his termination by Kral the next day. Kral did not know of Traylor's threat to approach the EEOC, [Record Document 20-5 at 4], and so Kral cannot have acted out of a retaliatory motive. However, under Fifth Circuit precedent, cat's paw analysis can demonstrate prima facie causation. *Zamora v. City of Hous.*, 798 F.3d 326, 331–32 (5th Cir. 2015).

> Plaintiffs use a cat's paw theory of liability when they cannot show that the decisionmaker—the person who took the adverse employment action—harbored any retaliatory animus. Under this theory, a plaintiff must establish that the person with a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action. Put another way, a plaintiff must show that the person with retaliatory animus used the decisionmaker to bring about the intended retaliatory action.

24

*Id.* at 331.

Although it is not certain that Traylor has produced sufficient evidence to proceed under a cat's paw theory, this Court will assume without deciding that he has done so and proceed with the remaining analysis. Traylor's only evidence that his threatened charge caused Kral to terminate him is the fact that he was terminated the day after he told Wells that he would file the discrimination charge. [Record Document 20-3 at 60]. "For temporal proximity alone to establish prima facie causation, it is required to be 'very close.'" *Wallace v. Seton Family of Hosps.*, No. 18-50448, 2019 WL 2484692, at *7 (5th Cir. June 13, 2019) (per curiam) (unpublished) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Given that less than twenty-four hours passed between Traylor's threat to go before the EEOC and his firing, the Court concludes that he has established a prima facie case.

Once the plaintiff establishes the prima facie case, an employer must articulate a legitimate nondiscriminatory reason for the adverse employment action. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016). If the employer does so, the burden shifts back to the employee to show pretext by "produc[ing] evidence that could lead a reasonable fact-finder to conclude that 'the adverse [employment] action would not have occurred 'but for' the employee's decision to engage in an activity protected by Title VII." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017) (quoting *Feist*, 730 F.3d at 454). The cat's paw theory modifies this element slightly by requiring an employee to "produce sufficient evidence that (1) his [co-workers or supervisors], motivated by retaliatory animus, took acts intended to cause an adverse employment action; and (2) those acts were a but-for cause of" that action. *Zamora*, 798 F.3d at 333. In order to establish this causation, the supervisor's or co-worker's

"influence with the decisionmaker [must] be strong enough to actually cause the adverse employment action." *Id.* at 332.

Southern has articulated a legitimate reason for terminating Traylor: "he was not learning at an acceptable pace and did not exhibit the level of skill, responsibility[,] and independence necessary to believe that he would be able to successfully fulfill the duties of a night forklift operator." [Record Document 20-5 at 3]. Hence, Traylor must produce summary judgment evidence that Wells took some act designed to get him fired and that that act actually caused Kral to fire him. *See Zamora*, 798 F.3d at 333. The record contains no evidence of such an action after Traylor made his threat to go to the EEOC. Similarly, the record contains no evidence that Wells had any special influence over Kral and his decisions. This leaves Traylor to rely solely on temporal proximity, and proximity alone cannot establish pretext. *Burton*, 798 F.3d at 240 (quoting *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 330 (5th Cir. 1998)). Defendants' motion must be granted.

## IV.  <u>Conclusion</u>

For the reasons above, Traylor has failed to carry his burden to produce evidence creating a genuine dispute of material fact that would necessitate a trial. As a result, Defendants' motion for summary judgment [Record Document 20] is **GRANTED**, and Traylor's claims are **DISMISSED WITH PREJUDICE**.

A judgment consistent with this opinion will issue separately.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ⟨handwritten⟩ day of ⟨handwritten⟩, 2019.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE